**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

Original
20-cv-2116
Chen, J.
Scanlon, M.J.

KEITH FERNANDEZ,

*Plaintiff, Pro Se,*

v.

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, OFFICER ANGELO MARTINO,
OFFICER JONATHAN GALINDO-SANCHEZ;

WOODHULL MEDICAL & MENTAL
HEALTH CENTER, *a New York City Hospital
Organization*

*Defendants.*

CASE NO.: _____



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 0 6 2020 ★

BROOKLYN OFFICE

## COMPLAINT

Plaintiff KEITH FERNANDEZ ("Fernandez" or the "Plaintiff") sues the Defendants,

CITY OF NEW YORK ( "City of New York"), NEW YORK CITY POLICE DEPARTMENT

("New York City Police Department" or "NYPD"), OFFICER ANGELO MARTINO ("Officer

Martino"), OFFICER JONATHAN GALINDO-SANCHEZ ("Officer Galindo-Sanchez") and

WOODHULL MEDICAL & MENTAL HEALTH CENTER ("Woodhull Medical Center").

## *INTRODUCTION*

Plaintiff KEITH FERNANDEZ hereby asserts the following claims against the Defendants in the above-captioned action:

(1) Violation of 42 U.S.C. §1983 for unlawful detention (False Arrest), in violation of the Fourth and Fourteenth Amendments;

(2) Abuse of Process;

(3) Deliberate Indifference, in violation of the Eighth Amendment;

(4) Intentional infliction of emotional distress;

(5) Negligent infliction of emotional distress.

## *JURISDICTION AND VENUE*

1. Jurisdiction arises under 28 U.S.C. §§ 1331, 1343(a) and 1367(a).

2. Jurisdiction of this Court for state claims is authorized by F.R.Civ.P. 18(a) and arises under the doctrine of pendent jurisdiction.

3. Plaintiff filed a Complaint of Police Misconduct & Witness Intimidation to the Office of the Inspector General for the NYPD on 3/13/20 and has made every effort to address all administrative remedies before the bringing of this action. Plaintiff notes that this Action is filed in Federal Court, not New York State Court, and is a Federal Question under 42 U.S.C. §1983 relating to violations of his 4th, 8th and 14th Amendment Rights. 42 U.S.C. §1983 provides for the unfettered right to sue local and state governments acting "under the color of state law" and waives their right to immunity and requirement for a Notice of Claim when the matter is a direct Federal Question. All state claims fall under the purview of F.R.Civ.P. 18(a).

*PARTIES*

4.      Plaintiff Fernandez is a 31 year-old man who resides in Kings County, NY. He

graduated Valedictorian of Trinity Preparatory School in 2006. He graduated from Harvard

University in 2010 with a Degree with Honors in Economics. After graduating from Harvard,

Fernandez worked for 4 years on Wall Street at leading Investment Banks and Private Equity

Firms, including Bank of America Merrill Lynch and KKR. After working at KKR, Fernandez

started several successful businesses including National Diagnostic Solutions LLC, winning the

Brillante Award from the National Society of Hispanic MBAs (NSHMBA) in 2015. In

December 2018, Fernandez graduated from Wharton Business School, the alma mater of

President Donald J. Trump, with a Masters of Business Administration (MBA) with a Major in

Finance. While at Wharton, Fernandez was a top student, being selected 3 consecutive times to

the Director's List placing in the top 10% of his Class. Additionally, he placed 1st in his class of

~850 students for the Academic Excellence Fellowship over 2 consecutive semesters,

maintaining a 4.0 GPA and 6 A+s. Mr. Fernandez currently owns a financial and healthcare

consulting practice (*See Fernandez Resume Exhibit 1*).

5.      Defendant New York City Police Department or NYPD is the Police Organization

of the City of New York, responsible for conducting all police activities free of deliberate

discriminatory intent, racism, intimidation, excessive force or encouraged assault.

6.      Defendants Officer Galindo-Sanchez and Officer Martino, were at all times

relevant to this action, Police Officers employed by the City of New York and the NYPD.

7.      Defendant Woodhull Medical & Mental Health Center is a New York Licensed

Hospital and Healthcare Organization, responsible for conducting all healthcare services free

of deliberate discriminatory intent, racism, sexual harassment, intimidation, deliberate indifference and encouraged assault.

### *FACTUAL ALLEGATIONS AND BACKGROUND*

8.      From September 2019 to April 2020, Plaintiff Fernandez resided in an apartment building in Brooklyn, NY. Gradually over this time period, his Landlord began treating him with escalating Tenant Harassment and Discrimination after being tipped-off by the NYPD that he had filed a Federal Civil Rights Lawsuit against the Police.

9.      The NYPD encouraged his Landlord to intimidate Fernandez as retaliation for filing a Lawsuit against the Police and reporting Police Misconduct.

10.     Given the retaliatory conduct by his Landlord, Fernandez filed Formal Complaints of Tenant Harassment & Discrimination with Management on 2/26/20 & 3/13/20.

11.     On 4/26/20, Fernandez was a victim of another Criminal Act in his apartment building, which he believes was further Tenant Harassment by his Landlord.

12.     Upon leaving his Apartment around noon on 4/26/20, Fernandez returned to find that his apartment had been broken into and a ~$1,500 Gold Harvard Class Ring had been stolen from its case in clear view sitting in his living room. Fernandez was 100% certain that the ring was in his apartment as he took it off earlier that morning and put it on his piano. He knew the ring had been stolen while he was gone and was suspicious that his Landlord had committed this Burglary as further retaliation for his Tenant Harassment Complaints.

13.     Upon discovering the Felony Larceny on 4/26/20, he immediately filed another Formal Complaint with his Landlord (See *Landlord Felony Burglary Complaint Exhibit 2*).

14.     He also called the NYPD on 4/26/20 and reported the Larceny. The NYPD sent Officer's Galindo-Sanchez and Martino to his Apartment to investigate (See *Police Incident Report Exhibit 3*).

15.     When Officer Galindo-Sanchez and Martino arrived they immediately began intimidating and taunting Fernandez and did not take his Complaint seriously. Fernandez believed the Officers were intimidating him as Direct Retaliation for the Federal Lawsuit he had filed against the Police and for the Complaint he had filed with the NYPD OIG on 3/13/20 reporting Police Misconduct (See *NYPD OIG Complaint Exhibit 4*).

16.     Fernandez believed the Officers wanted to "punish him" for exercising his legal right to report Police Misconduct and "retaliate" against him for reporting such behavior.

17.     Due to the strange and unethical behavior of Officer's Galindo-Sanchez and Martino and their deliberate indifference towards his Larceny Complaint, Plaintiff Fernandez asked the Officers: "*Under the Penalty of Perjury, were you tampered with before coming here? Did you hear anything about me before coming here? Did anyone tell you about me and my Lawsuit against the Cops? Are you intentionally trying to intimidate or retaliate against me?*"

18.     In response, the Officers looked nervous and both said: "*No. We have no idea who you are and we were not tipped off before coming here.*" The Plaintiff believes this was a Lie.

19.     After the police report on 4/26/20, the Tenant Harassment only worsened against the Plaintiff, boiling over into another Criminal Act on 4/30/20.

20.     On 4/30/20, Fernandez left his apartment around 8pm and returned around 9pm to find that once again, the door to his Apartment had been Illegally Accessed and the Security Bolt had been tampered with propping his door open (See *Pictures Complaint 5*), obviously reflecting another Burglary (See *Landlord Email Complaint 5*).

21.     After discovering yet another Burglary, Fernandez went to the Doorman in his Lobby to complain and only made the following statement: *"This is a Felony Human Rights Crime."*

22.     When reporting the Burglary, Fernandez did not scream. He did not shout. He did not violently lunge at anyone. He made no violent threat. He had no weapon. He did not do Anything Illegal. The only thing he said was: *"This is a Felony Human Rights Crime."*

23.     Immediately after making this Complaint, Fernandez went back up to his apartment and moments later 6 NYPD Officers and 2 Paramedics show up, including Officers Galindo-Sanchez & Martino.

24.     The Officers immediately started intimidating Fernandez. Fernandez asked them *"Why so many cops? Do you really need 8 police to talk to me? Are you guys trying to Harass & Intimidate me? Are you doing this to retaliate against me for reporting Police Misconduct?"*

25.     Fernandez told them he made no violent threats, had no weapons, made no aggressive lunges and broke no crimes. He told them the only thing he did was report the Burglary Crime and the only thing he said was *"This is a Felony Human Rights Crime."* He told them *"Go Check the Surveillance Video"* as he knew he was innocent.

26.     The Police Officers intentionally did not listen to Fernandez or give appropriate credence to his side of the story. Their goal was to incarcerate Fernandez as retaliation for his Civil Rights Lawsuit and reports of Police Misconduct to the NYPD OIG. The truth didn't matter to the Cops and Paramedics whatsoever.

27.     Knowing they were going to frame him as Witness Intimidation, Fernandez immediately started taking video on his personal Cell Phone of the incident to prove he was not

acting violently, screaming or doing anything wrong. He was just exercising his legal right to report another Crime.

28.    Within seconds, two Paramedics who had been tipped-off by the Police approached Fernandez and motioned to Officer Martino to put him in Cuffs. The Paramedics didn't even do a Physical Examination and barely asked Keith any Questions. The decision to commit Keith had been "Framed-Up" and "Decided Beforehand." The truth didn't matter to the Police and Paramedics. This was their way of retaliating and witness intimidating him.

29.    Furthering their extreme behavior and the notion that the Arrest was "Framed" and "Covered-Up," Fernandez returned to his apartment the next day to find that the Police had Intentionally Deleted the Video of the Arrest from his Personal Cell Phone, committing N.Y. Penal Law § 215.40(2) – Felony Tampering with Evidence. He knew the video was saved to his Cell Phone as he had taken multiple Clips and saw them saved. When he returned and saw videos deleted on his phone, he then knew that the Police had intentionally destroyed them after his arrest to prevent the video from being used as Evidence in Court.

30.    Upon being taken to and arriving at Woodhull Medical Center, the Cops kept intimidating and making fun of Fernandez. This suggested to the Plaintiff that the Hospital had been tipped off and were going to attempt to frame and harass him.

31.    When he get to the Hospital, it looked suspicious that Fernandez was brought in. Most of the other patients were Schizophrenic, homeless, extreme drug addicts, mumbling to themselves, freaking out, violently lunging or clearly extremely mentally disturbed.

32.    Plaintiff Fernandez was just sitting there quietly remaining calm.

33.    When he arrived to the Hospital, the Staff refused to give him food, blankets or toiletries. He had to ask several times even to get assigned a room to sleep.

34.     That night, when Fernandez was lying in his cell, a Hospital Employee woke him up, turned on the lights in his room and stated *"You're Getting Murdered."*

35.     When Fernandez woke up the next morning on 5/1/20, with no food in his stomach or water to drink, the Hospital Staff immediately asked him to give blood.

36.     When they went to insert the Needle, they did it *negligently* and stuck the Needle in the wrong vein (See *Picture Evidence 6: Negligent Needle Insert*). They should of stuck Fernandez in the Larger Vein, but instead stuck him in a small vein below the proper insertion point. It is clearly noticeable in the picture evidence that they hit a smaller, less dilated vein.

37.     This *negligent* needle insert caused Fernandez immense pain and unnecessary suffering.

38.     Due to the pain of the *negligent* needle insert, Fernandez immediately suffered a Vasovagal Syncope and passed out falling to the ground.

39.     Such Negligence & Psychiatric Harassment put Fernandez at risk for Permanent Brain Damage due to the restriction of oxygen to his brain from the Syncope. He was dehydrated and scared from being abused by the Police and Hospital Staff and this only worsened his condition as his blood was drawn in a *negligent* manner.

40.     Immediately after suffering the Syncope, Plaintiff Fernandez went to sit in the Common Area of the Psych Ward.

41.     Within minutes, a Violent Patient approached Fernandez while he was sitting (without being provoked whatsoever) and made menacing lunges and threats to him. The Violent Patient told Fernandez *"I hate you Pussy White Boy. Give me your Fucking Chain."*

42.     Fernandez was wearing no Chain and had no idea who told him he had a Chain.

43.     The entire time the Violent Patient was making Threats to Fernandez, the entire Hospital Staff were watching the entire incident and did nothing. The Staff laughed at Fernandez and intentionally made fun of him, suggesting they had been tampered with by the Police.

*44.*     **Additionally, the Hospital Staff intentionally brought the Violent Patient out of his cell every time Fernandez entered the Common Area and let the Patient chase Fernandez around the Hospital Wing. The Staff were laughing at Fernandez, called him a "Pussy White-boy" and thought it was funny. They let the Violent Patient out on purpose to assault Fernandez. This was most likely due to the influence of the Police who wanted to "punish" Fernandez for filing a Police Misconduct Lawsuit and Complaint to the OIG.**

45.     This Extreme Behavior by the Hospital Staff suggested that they were intentionally letting Fernandez get assaulted, encouraged it, did not properly protect Fernandez and that they had been tampered with by the Police and that this was Retaliation.

46.     The Threats and Menacing by the Violent Patient finally boiled over and the Patient backed Fernandez to a wall and then struck him in the Left Torso and Arm.

47.     The entire time, a dozen of the Hospital Staff Employees were watching and let it happen. Only after Fernandez screamed *"This is A Felony Crime,"* did the Staff come in and intervene to subdue the Violent Patient.

48.     The Violent Patient committed Felony 2nd Degree Assault under NY Penal Code as the Assault occurred "while being held in correctional facility," and with Aggravated Terroristic Threats and Menacing.

49.     The entire Assault was captured on Surveillance Video and is easily provable. Fernandez filled out a Police Report in the Hospital signifying he wants to Press Charges (See *Hospital Police Report Exhibit 7*).

50.     If Charges are not filed, this is Obstruction of Justice with an intent to cover-up an easily probable Crime as it was all captured on the Hospital Surveillance Camera and over 20 people witnessed the Assault, Menacing & Terroristic Threats.

51.     Plaintiff Fernandez was then seen by the Hospital Physicians on 5/1/20. Given his educational background, impressive work accomplishments, excellent physical health and the credibility of his story that he was having ongoing problems with his Landlord, the Physicians let Fernandez out of the Facility on 5/1/20 and did not Formally Diagnose him with any Psychiatric Disorder.

52.     As will be evidenced by the Surveillance Video, Fernandez was acting completely non-violent and calm the entire time. Even when provoked by violent patients, Fernandez maintained a calm and non-violent demeanor. Additionally, Fernandez was displaying no bi-polar or manic behavior, was not talking to himself or exhibiting any schizophrenic mannerisms, was not exhibiting any aggressive behavior and was behaving in a calm and relaxed way.

53.     After being released from the Hospital, Fernandez reported the Criminal Felony Witness Intimidation and Evidence Tampering to the U.S. Attorney of the Eastern District of New York and the Brooklyn District Attorney (See *Complaint Letter & Report Exhibit 8*)

## *COUNT I – FALSE ARREST*

54.     This Count is specifically against Defendant's City of New York, New York City Police Department, Officer Galindo-Sanchez and Officer Martino.

55.     This Count is specifically in reference to Paragraphs 15 – 32 of this Complaint.

56.     With no direct evidence of violent threats, aggressive lunging, shouting, screaming, threats of imminent serious bodily injury or suicidal intent, with no direct verbal confessions of imminent serious bodily injury or suicidal intent and with no direct observations

of violence, threats of violence or aggressive lunges, Plaintiff Fernandez never satisfied the criteria to be arrested and involuntarily detained. Thus, his subsequent Arrest and Incarceration were predicated on "Framed" and "Manipulated" Evidence and thus False themselves.

57.     After finding his Apartment broken into, the only thing Plaintiff Fernandez said that night to management was: "*This is a Felony Human Rights Crime.*" Upon arriving to the scene, the Officers exhibited Deliberate Indifference to the Burglary and did not properly address the Plaintiff's logical and truthful concerns. They did not seek to review the Surveillance Video to find the evidence necessary to arrest the Plaintiff, they did not listen to the Plaintiff's logical counter-points and they deliberately paid no attention to the Plaintiff's side of the story.

58.     In fact, the Defendants were actually complicit and working with management in framing Plaintiff Fernandez and did so to "retaliate" and "punish" the Plaintiff for reporting Police Misconduct. This is why they did it. To retaliate against the Plaintiff.

59.     The Paramedics exhibited deliberate negligence and did not do a proper physical examination of the Plaintiff. They barely asked him any questions before motioning to the Arresting Officers to detain the Plaintiff, which they did with excessive force intentionally.

60.     When arresting the Plaintiff, the Officers showed excessive force and pushed the Plaintiff to the wall despite him making no attempt to resist and not being violent whatsoever. They intentionally had 4 cops push him to the wall and violently arrest him to "retaliate" and "punish" him for exercising his legal right to report Police Misconduct

61.     The Defendants negligently and intentionally ignored any inconsistencies to further their ulterior motive of falsely arresting and imprisoning Plaintiff Fernandez as they wanted to cause the Plaintiff as much physical, emotional and financial distress as possible.

62.     Due to these actions, Plaintiff Fernandez suffered from deprivation of freedom and liberty, physical detention and loss of time, extreme reputational damage to his personal business reputation and his federal lawsuit, loss of future earnings and earnings capacity in New York City, extreme humiliation, psychological trauma, intentional and negligent infliction of emotional distress, a medical bill from Woodhull Hospital and negligent physical abuse, including an intentional criminal assault and a vasovagal syncope while drawing blood risking permanent brain damage and other general and special damages.

## COUNT II – ABUSE OF PROCESS

63.     This Count is specifically against Defendant's City of New York, New York City Police Department, Officer Galindo-Sanchez, Officer Martino and Woodhull Medical Center.

64.     This Count is in reference to Paragraphs 16 – 50 of this Complaint.

65.     The above-mentioned Defendants, in tight coercion with one another, grossly abused their positions of authority as Law Enforcement Officers, Paramedics and Healthcare Officials and their influence in the legal system to severely frame and injure Fernandez, intentionally manipulating evidence and grossly exaggerating Plaintiff Fernandez's condition in order to falsely arrest him and detain him in a New York Hospital, solely for the purpose of "retaliating" against him for exercising his legal right to report Police Misconduct and to sabotage his other Federal Whistle-Blower Suit and the potential monetary reward.

66.     With the color of malice and extreme bias, all of the above-mentioned Defendants possessed ulterior purposes and motives underlying his arrest and the manipulation of the involuntary detainment process, including retaliating against Plaintiff Fernandez for filing a Lawsuit against the Police and reporting Misconduct, intentionally sabotaging Plaintiff Fernandez's other Federal Whistle-Blower Lawsuit and the resultant monetary reward potentially

generated and maliciously seeking revenge against Plaintiff Fernandez for causing Narcissistic Injury to their Egos and sense of Pride. They wanted to "dominate" and "punish" Fernandez.

67.     Additionally, the Defendants didn't stop their malicious abuse of process after Plaintiff Fernandez was detained, but actually exacerbated and escalated it to cause him physical damage and extreme emotional distress. Defendants intentionally and unnecessarily used excessive force when arresting the Plaintiff, having 4 officers violently push him to the wall despite him not resisting whatsoever. They went to extreme lengths during Plaintiff Fernandez's imprisonment to actively seek to extend Plaintiff Fernandez's incarceration, racially harass and abuse him by calling him a "Pussy White-Boy," negligently assault him by intentionally inserting a Needle into the wrong vein when drawing Blood causing him a Syncope and intentionally allowing a Violent Patient to taunt him, menace him and finally assault him.

68.     Due to these actions, Plaintiff Fernandez suffered from deprivation of freedom and liberty, physical detention and loss of time, extreme reputational damage to his professional reputation, Company and his Whistle-Blower Lawsuit, loss of future earnings and earnings capacity in the New York finance industry, extreme humiliation, psychological trauma, intentional and negligent infliction of emotional distress, a medical bill from Woodhull and negligent physical abuse such as a vasovagal syncope while drawing blood risking permanent brain damage, an intentional criminal assault that occurred and other general and special damages.

## COUNT III – DELIBERATE INDIFFERENCE (VIOLATION OF THE 8th AMENDMENT)

69.     This Count is specifically against Woodhull Medical Center, staff and employees.

70.     This Count is in reference to Paragraphs 32 – 54 of this Complaint.

71.     Defendant Woodhull Medical Center, including Nurses and Techs showed intentional and deliberate indifference to Plaintiff Fernandez's complaints that his civil and disability rights were being violated and that he was at great risk of additional psychiatric trauma, physical abuse and assault, which did indeed occur.

72.     As established under *Farmer v. Brennan*, 511 U.S. 825, an entity can be found liable under the Eighth Amendment for denying an inmate humane conditions if "the official knows of and disregards of excessive risk to inmate health or safety."

73.     Woodhull Medical Center Staff called the Plaintiff a "Pussy White-Boy" and intentionally showed Deliberate Indifference to an assault that occurred against him while detained in their Facility. The Violent Patient that assaulted the Plaintiff was threatening him for several minutes before finally assaulting him. The Staff were watching these threats take place and did nothing to stop the assault.  They were just sitting and watching with smirks on their faces even as the Violent Patient backed the Plaintiff to the wall and finally assaulted him. Only when the Plaintiff screamed: *"This is A Felony Crime,"* did the Staff intervene as they were scared they could lose their jobs or face discipline.

74.     Additionally, even after the assault occurred, the further deliberate and sociopathic actions of the Staff revealed their desire to see Plaintiff Fernandez intimidated and assaulted again. As the evidence will show, even after the assault occurred, the Staff went to extreme lengths to *intentionally* allow more threats to occur by the same Violent Patient by *intentionally* bringing the patient out of solitary confinement every time Fernandez entered the Common Area of the facility to allow him to further Violently Threaten Fernandez. Even after the assault occurred, the Staff intentionally brought the Violent Patient out of his cell and

allowed him to chase Fernandez around the Hospital Floor and make further terroristic threats of violence against him.

75.     The Staff intentionally encouraged the assault and the threats against the Plaintiff, most likely due to the influence and tampering by the NYPD. The Staff showed blatant disregard for the safety of the Plaintiff and intentionally put his life in danger.

76.     Due to these actions, Plaintiff Fernandez suffered from a physical assault, a vasovagal syncope from a negligent needle insert that put him at risk for brain damage, extended and unwarranted harassment, extreme psychological trauma, intentional and negligent infliction of emotional distress, inadequate and sub-standard healthcare delivery, psychiatric abuse and unneeded deprivation of freedom and liberty.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

77.     This Count is specifically against Defendant's City of New York, New York City Police Department, Officer Galindo-Sanchez and Officer Martino.

78.     This Count is in reference to Paragraphs 15 – 32 of this Complaint.

79.     Defendants engaged in, instigated and directed a course of extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, extreme emotional distress to the Plaintiff.

80.     This behavior included intimidating Plaintiff Fernandez, deliberately ignoring his complaints of Felony Crimes committed against him, "framing" and falsely arresting Plaintiff Fernandez and intentionally arresting him with excessive force.

81.     All of this was done to "retaliate" against Plaintiff Fernandez for exercising his legal right to report Police Misconduct, to further sabotage his Whistle-Blower Lawsuit and to

"punish" and "seek revenge" against Plaintiff Fernandez for the Narcissistic Injury he caused their Egos and sense of Pride.

82.     As a result of the Defendant's malicious, highly-coordinated and outrageous treatment of the Plaintiff, the Plaintiff suffered physical damages, including a vasovagal syncope and assault, psychiatric abuse, extreme humiliation, public shaming, extreme reputational damage, extreme business damages and severe emotional distress and psychological trauma.

## COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

83.     This Count is specifically against Defendant's City of New York, New York City Police Department, Officer Galindo-Sanchez and Officer Martino.

84.     This Count is in reference to Paragraphs 15 – 32 of this Complaint.

85.     Defendants have a duty to ensure all court proceedings and police activities are free of malicious intent, discrimination, hostility and retaliatory behavior. Defendants, in failing to adequately supervise, consider, investigate and alter their behavior, subjected the Plaintiff to suffering additional severe and un-needed humiliation and extreme emotional distress.

86.     As a result of the Defendant's malicious, highly-coordinated and outrageous treatment of the Plaintiff, the Plaintiff suffered physical damages, including a vasovagal syncope and assault, psychiatric abuse, extreme humiliation, public shaming, extreme reputational and business damages and severe emotional distress and psychological trauma.

## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

87.     This Count is specifically against Woodhull Medical Center, staff and employees.

88.     This Count is in reference to Paragraphs 31 – 52 of this Complaint.

89.     Defendants engaged in, instigated and directed a course of extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, extreme emotional distress to the Plaintiff.

90.     This outrageous behavior included intentionally or negligently puncturing the wrong, little vein when drawing blood from Fernandez to cause him unneeded pain and suffering, causing the Plaintiff to suffer Vasovagal Syncope which put him at risk for permanent brain damage and a slip-and-fall accident.

91.     This outrageous behavior included taunting Plaintiff Fernandez, saying he was "getting murdered" and racially discriminating against him calling him a "Pussy White-Boy."

92.     This outrageous behavior included intentionally allowing a Violent Patient to assault Plaintiff Fernandez in the facility, then intentionally bringing out the same patient whenever he entered the Common Area and allowing the patient to further violently threaten him and chase him around the Facility floor *after* the assault occurred.

93.     As a result of the Defendant's malicious, highly-coordinated and outrageous treatment of the Plaintiff, the Plaintiff suffered physical damages, including a vasovagal syncope and criminal assault, psychiatric abuse, extreme humiliation, public shaming, extreme reputational damage and severe emotional distress and psychological trauma.

## COUNT VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

94.     This Count is specifically against Woodhull Medical Center, staff and employees.

95.     This Count is in reference to Paragraphs 31 - 52 of this Complaint.

96.     Defendants have a duty to ensure all healthcare and mental health proceedings are free of malicious intent, deliberate indifference, discrimination, hostility and retaliatory behavior. Defendants, in failing to adequately supervise, consider, investigate and alter their behavior,

subjected the Plaintiff to suffering additional severe and un-needed humiliation and extreme emotional distress.

97.       As a result of the Defendant's malicious, highly-coordinated and outrageous treatment of the Plaintiff, the Plaintiff suffered physical damages, including a vasovagal syncope, psychiatric abuse, extreme humiliation, public shaming, extreme reputational damage and severe emotional distress and psychological trauma.

## *PRAYER FOR RELIEF*

WHEREFORE, Plaintiff prays for relief as follows:

1. Award Plaintiff compensatory damages, both general and special, of $7,469,750 as calculated in *Exhibit 9: Estimate of Compensatory Damages*. The compensatory damages include and are not limited to extreme physical abuse and criminal assault, irreparable financial and reputational damages, irreparable damages to client relationships and business contracts, irreparable loss of future earnings potential in New York for individuals graduating at the top of their class with elite Harvard-Wharton pedigrees in the lucrative Private Equity and Hedge Fund industry, a material probability of irreparable damages to Plaintiff Fernandez's Other Whistle-Blower Litigation, emotional pain and suffering, psychological trauma, medical bills, costs related to legal services and any other compensatory damage as permitted by law and according to proof at trial;

2. Award Plaintiff exemplary and punitive damages of $14,939,500 (or 2x the compensatory damages) due to the extreme, sustained, pre-meditated and malicious

nature of the Defendants actions towards Plaintiff Fernandez, their impact on the integrity

of the overall law enforcement, mental health and legal system in America and as a way

to deter future extreme abuse of process in the legal system;

3. Award costs of suits pursuant to 42 U.S.C. § § 1920 and 1988; and,

4. Award such other and further legal and equitable relief that this Court deems necessary,

just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by Jury.

Dated: May 5, 2020          Respectfully Submitted;

BY: s/

*Pro Se, Plaintiff*
69 Montgomery St #331
Jersey City, NJ 07302
Email: kfernan88@gmail.com

# EXHIBIT 1: FERNANDEZ RESUME

## KEITH FERNANDEZ

P.O. Box 331 Jersey City, NJ 07303  Biblematthew5.5@gmail.com

## EDUCATION

**THE WHARTON SCHOOL, UNIVERSITY OF PENNSYLVANIA**                    Philadelphia, PA
*Master of Business Administration Candidate; Finance*                         2014; 2017-2018
- Selected three times to the Fall 2017, Spring 2018 & Fall 2018 Director's List, placing in the Top 10% of the Class
- Selected as a TA for Corporate Finance by Professor Jules van Binsbergen due to strong academic performance
- Member of the PE/VC Club, Healthcare Club, Wharton Soccer Club and Wharton Hispanic American MBA Association

**HARVARD UNIVERSITY**                                                   Cambridge, MA
*Bachelor of Arts in Economics, Cum Laude*                                      2006-2010
- Recipient of Cum Laude Honors. Recipient of Departmental Honors from the Economics Department
- Member of Board of Directors of Student-Faculty Advisory Board. Co-founder of the NESL Club Soccer Team

## EXPERIENCE

**MONARCH FINANCIAL CONSULTING LLC** *Consulting Firm Focused on Finance*          New York, NY
**Founder and Chief Executive Officer**                                          2018-Current
- Advise clients on fundraising, financing options, capital structure optimization, accounting, budgeting and operations
<u>Select Work Experience</u>
- **Fractional Chief Financial Officer (CFO) of Offshore Marine Asset Management Company**
  - Serve as CFO helping structure a $100mm Segregated Portfolio Company (SPC) investing in marine assets
- **Fundraising Advisor for Nascent Technology App in the Entertainment and Restaurant Space**
  - Engaged with client as a Fundraising Advisor and secured the client $1mm in fundraising in 2 months

**NATIONAL DIAGNOSTIC SOLUTIONS LLC** *Healthcare Start-Up Focused on Diagnostic Imaging*   New York, NY
**Founder and Chief Executive Officer**                                          2014-2017
- Founded National Diagnostic Solutions LLC (NDS), a healthcare start-up focused on diagnostic imaging, and acted as CEO responsible for overseeing strategic initiatives, maintaining client relationships and directing operations
- Created rapid financial growth by negotiating exclusive imaging contracts with large healthcare organizations
- Recipient of the 2015 Brillante Award for Entrepreneurial Excellence from the National Society of Hispanic MBA's
- Selected as a Top 5 Start-Up by the Bright House Regional Business Awards and featured on Bright House Networks
- Partnered with current Congressman Stephanie Murphy as a 2016 Guest Lecturer in Corporate Finance at Rollins College

**KOHLBERG KRAVIS ROBERTS (KKR)** *Private Equity Firm Managing $148.5B in Assets*     New York, NY
**Associate**                                                                    2012-2014
- Performed public and private fundamental equity and credit analysis, due diligence and financial modeling
- Chosen as Lead Associate for the KKR Strategic Plan, working directly with Senior Management on overall firm strategy
<u>Select Investment & Portfolio Management Experience</u>
- **First Data Corporation** – $3.5 billion Pre-IPO Equity Investment and Capital Raise for KKR Portfolio Company
  - Associate supporting deal team, including conducting due diligence, building financial model and executing capital raise
  - Worked directly with FDC executive team to create investment documents and financing presentations
  - Structured and executed equity syndication process and worked on evaluating and executing credit transactions
- **Alliance Tire Group** – ~$650 million Leveraged Buy-Out with $165 million Private Placement of HoldCo PIK Notes
  - Played an integral role performing transaction due diligence, building financial model and developing capital structure
  - Implemented a complex capital solution that supported KKR's equity investment and generated $4.4mm in economics
  - Presented updates on transaction to KKR Investment Committee led by Henry Kravis and George Roberts
  - Investment generated a 2x + MOIC for KKR and was one of the largest single PE exits for an Indian Company in history

**BANK OF AMERICA MERRILL LYNCH** *Leveraged Finance Investment Banking Group*         New York, NY
**Senior Analyst**                                                               2011-2012
- Consistently a top-ranked Analyst in Class. One of only a few to receive a promotion to Senior Analyst
<u>Select Transaction Experience</u>
- **The Yankee Candle Company** – Lead Left Arranger on $725 million Term Loan B and $175 million ABL Facility
  - Built and maintained transaction model, prepared internal risk approval memorandum and created financing documents
- **Bass Pro Group LLC** – Lead Left Arranger on $903 million Term Loan B and Lead Arranger on $300 million ABL Facility
  - Created transaction model and financing documents, including road show presentations and CIMs

# EXHIBIT 2: 4/26/20 Burglary Complaint

## Report of Felony Burglary & Larceny

**Keith Fernandez** <kfernan88@gmail.com>
To: "1S1 (One South First)" <1S1management@twotreesny.com>, One South First Leasing
<Onesouthfirst@twotreesny.com>

Sun, Apr 26, 2020 at 7:01 PM

Dear One South 1st Management,

I wanted to make you aware of a Very Serious Matter that happened today at my apartment 29E.

Earlier this afternoon, I left my apartment to run some errands. Upon returning to my apartment, I found that a Very
Expensive Solid Gold Harvard Ring that was sitting on my Piano in the Case was Stolen from my apartment.

I am 100% Certain that the Solid Gold Ring valued at approx. $1,500 was Stolen earlier this afternoon from my
Apartment. The Ring was sitting inside the Case and was stolen out of the case after I left my apartment around Noon.
The case and ring were sitting on my Piano in the middle of the apartment in Clear View.

This is a Very Serious Matter. This is Felony Burglary and Larceny and could result in Jail Time.

I would like to Request an Unadulterated or Tampered Surveillance Video of the Hallway today so that we can determine
who the Burglar was. This should be Extremely Easy to provide. The Burglary 100 % happened today earlier this
afternoon. I had the Ring this morning, put it in my case, left my apartment, and now it is Stolen.

Can you please advise me on how we can investigate this issue? Can you please provide me the Unadulterated
Surveillance footage for today?

As I hope you know, it is a Crime to impede the Investigation of a Felony Burglary. It is also a crime to Perjure or Attempt
to Cover Up a Felony Burglary.

Can you please advise me on this situation as soon as possible?



# EXHIBIT 3: Galindo-Sanchez Police Incident Report

**INCIDENT INFORMATION SLIP**
PD 301-164 (Rev. 07-15)

(718) 963-5311

Welcome to the **90th Precinct**, **211 UNION AVENUE, BROOKLYN NY   11211**

We hope that your business with us was handled satisfactorily. Your particular matter has been assigned the following number(s):

Complaint Report # _____ Accident Report # _____ Aided Report # _____

Reported to: Po  GALINDO SANCHEZ  23267   Date of Occurrence: 4/24/20   Time: 2130 hr
(Rank) (Name)           (Shields)

Location of Occurrence: 1 South 1 St Brooklyn NY

Crime: _____

Please keep this report should you have to refer to this matter in the future.  If you need assistance feel free to contact us at telephone number **(718) 963-5311.**  Please let us know if you have any suggestions on how we can better serve you.  As you may already know, we will provide you with a crime prevention survey of your residence or business. Please ask for more information on this and other crime prevention initiatives.  Our goal is to make you and your property safe.

*Accident Reports can be obtained online by visiting:* **https://collisionreport.nypdonline.org/** *or in person at ANY Police Precinct. (Scan QR Code [Right] for access to the NYPD Collision Report System) Accident reports may take up to three business days to appear in the system to be printed or picked up.*

**COURTESY – PROFESSIONALISM – RESPECT**
**REMEMBER: CALL "911" FOR EMERGENCIES ONLY!!!**

# EXHIBIT 4: 3/13/20 Complaint Filed w/ NYPD-OIG

## To Submit

**Keith Fernandez <kfernan88@gmail.com>**
To: Keith Fernandez <kfernan88@gmail.com>

Fri, Mar 13, 2020 at 10:31 AM

I am being Criminally Stalked and Surveilled by the NYPD in Brooklyn with the intent of Intimidating and Dissuading me from Litigating A Federal Civil Rights Lawsuit against the police. In this way, the NYPD are systematically and corruptly engaging in Extreme Felony Stalking and Felony Witness Tampering against Keith Fernandez. They do this because they think they can get away with it. It is Criminal Abuse of Power & Corruption. In particular, I was harassed by Squad Car 425617 who followed me around Brooklyn on 3/12/20 buzzing his lights to Intimidate me even though I was breaking no laws. He stalked me outside an eating establishment I was at. Additionally, that very same morning, 2 NYPD traffic cops Stalked Me in the City Mart grocery store while I was buying food for my stomach. They followed me around everywhere I went. They also Defamed me to the Staff of the grocery store telling them they shouldn't Sell Me Food for my stomach because I was a "Criminal" and "Severely Mentally Ill." They are Committing Extreme Defamation to Feloniously Witness Intimidate violating 18 U.S. Code 1512. Additionally, members of the NYPD and the NY Fire Department are Continuously Criminally Defaming me to my Land-Lord and eating establishments. Fire Truck 221 and 229 continuously Stalk Me around Williamsburg to Criminally Witness Tamper. They tell All Eating Establishments I visit that I am (1) Criminally Mentally Ill, (2) Taking Illegal Steroids and (3) Committing Financial Crimes with NO CHARGES or CONVICTIONS relating to such. They also tell Eating Establishments to tamper with my food, serve me Raw Food and intentionally try to give me a Food Borne Illness, effectively Criminally Assaulting me. They leave DEAD RATS outside bars I visit to Feloniously Witness Intimidate. The eating establishments where the Criminal Defamation and Witness Tampering by the Police occur include Croxley's Bar & Grill, Peter Lugers, Barano, Two Hands, Starbucks and many others. It is SEVERELY CRIMINAL and a Severe Human Rights Violation what they are doing to Keith Fernandez. Additionally, officials from the NYPD and NY Fire Department are Stalking me in my Apartment Building to Intimidate me for reporting Police Misconduct. Fire Department and Police Officials Criminally Stalk me and wait for me to arrive to my building. They then Surround and Body Me Up in Elevators to Criminally Stalk me, intimidate me and witness tamper. In this way, the NYPD and NY Fire Department are engaging in Blatant Federal Witness Tampering to dissuade me from litigating my Civil Rights Lawsuit. Instead of Stalking Plaintiff Fernandez, the NYPD and NY Fire Department should do their job and fight crime and put out fires. Not Criminally Stalk and Defame Whistle Blower Fernandez. This is a Blatant Waste of Government Resources. All of this behavior is BEING DOCUMENTED. If it continues, Plaintiff Fernandez will file a Lawsuit against the NYPD and NY Fire Department and will seek Millions of Dollars in damages due to the adverse effect they have on his Federal Whistle Blower Lawsuit.

# EXHIBIT 5: 4/30/20 Landlord Burglary Complaint

## Report of Felony Burglary & Larceny

**Keith Fernandez** <kfernan88@gmail.com>                                                      Fri, May 1, 2020 at 3:18 PM
To: "Tebbo, Abir" <atebbo@twotreesny.com>
Cc: "1S1 (One South First)" <1S1management@twotreesny.com>, 1S1 Managers <1S1managers@twotreesny.com>, One
South First Leasing <Onesouthfirst@twotreesny.com>

Another Breaking & Entering

To whom it may concern:

I wanted to report another Serious Crime & Illegal Breaking & Entering into my apartment last night 4/30/20 and potential
ongoing Tenant Harassment and Framing.

A little before 8pm last night, I left my apartment to transport personal items to my vehicle parked nearby.

Upon returning around 9pm, I noticed that the Door to my apartment was propped open and the Manual Lock on the Door
was turned to the right exposing my personnel belongings and leaving my door open.

Obviously, while I was gone for 30 minutes, someone again Entered My Apartment Illegally constituting another Criminal
Breaking & Entering under New York Penal Code. This could of potentially been done to Set Me Up and Frame Me. When
I discovers this, all I said was "This is a Felony Human Rights Crime." Thats it. No Aggressive Lunges. No Violent
Threats. No Weapon Threats.

This matter is being forward for investigation to the FBI and DOJ.

Please see pictures below of the lock and door propped open. I know with 100% Factual Certainty that I shut the door
and I never left that lock turned to the right last night. It was my belief that this was done to Frame Me.

Re-gar-ds,
Fernandez

## EXHIBIT 6: 4/30/20 Negligent Needle Stick in Wrong Vein Causing Syncope & Bruising



# EXHIBIT 7: Assault Hospital Police Report

## HOSPITAL POLICE
### NORTH BROOKLYN HEALTH NETWORK

FERNANDEZ, KEITH
USS: 3X58539
DOB: 7/10/1968 (31 yrs) M
MRN: 418767B
Adm Date: 4/16/2020

WMMHC ☐    CDTC ☐    Off-S ☐

## STATEMENT

CONTROL # _____

NAME: Keith Fernandez    D.O.B: 7/10/1968    AGE: 31

HOME ADDRESS: One South 1st Str Apt 2SE Brooklyn NY 11249

EMPLOYED BY: Set Crawford    EMPLOYER'S ADDRESS: Home Adres

WORK TELEPHONE # (407), 474-0253    HOME TELEPHONE # (47), 474-9253

WORK DAYS: _____    WORK HOURS: _____

DATE OF STATEMENT: 5/1/2020    DAY: _____    TIME INITIATED _____

### DETAILED DESCRIPTION OF INCIDENT

I, Keith Fernandez, was a witness to, or involved in, an incident or crime that

occurred at Woodhull hospital    time appx 8AM

On the following date 5/1/2020    day _____ time appx 8AM

Upon Waking up this morning in Woodhull Hospital I was immediately asked to give blood. This was despite me being on an Empty Stomach and not being provided food the night before. Upon drawing blood, the Needle was Negligently forced into my vein causing me Immense Pain. As the Blood was being drawn, I suffered a Vasovagal Syncope and Immediately passed out. This put me at Risk for Permanent Brain Damage. Right after I suffered the Negligent Vasovagal Syncope, I went into the Common Area of the Hospital Floor & I was immediately approached by a Violent Inmate (See Surveillance Video). I was sitting down & did not provoke the Man at all. The Violent Man approached me and said "Pussy White Boy. I hate You. Give Me Your Fucking Chair." I did not have a Chair on. He then bullied me to the Wall infront of the Entire Hospital Staff. They were bullying & did nothing. The Man then Commited Assault & Battery and Struck me on my Left Arm (See Surveillance Video). The Staff were watching it happen & did not Properly Protect Me showing "Deliberate Indifference."

STATEMENT CONTINUED: YES ___ NO X

Keith Fernandez
PERSONNEL TAKING STATEMENT

_____ (signature)
SIGNATURE OF PERSON MAKING STATEMENT

WITNESS _____    TIME STATEMENT ENDED _____

WITNESS _____

I Would Like To Press Charges for Assault & Battery

# EXHIBIT 8: Crime Report of Police Misconduct & Federal Witness Tampering Made to D.A.



United States Attorney's Office
Eastern District of New York
Criminal Intake Unit
Criminal Division

### Civilian Crime Report

The U.S. Attorney's Office represents the Government in legal proceedings and works closely with investigative agencies including the FBI. The Criminal Division of the United States Attorney's Office is charged with enforcing the federal criminal laws within the Eastern District of New York, which encompasses three of the boroughs of New York City (Brooklyn, Queens and Staten Island), and both suburban counties on Long Island (Nassau and Suffolk County).

| Person Completing This Report: | | Person Entity Being Complained About: | |
|---|---|---|---|
| Keith Fernandez | | NYPD, Paramedics | |
| Name | | Name | |
| One South 1st Street | | 211 Union Ave. | |
| Address | | Address | |
| Apt 29E | | | |
| Address (Line 2) | | Address (Line 2) | |
| Brooklyn, NY | 11249 | Brooklyn, NY | 11211 |
| City, State | Zip | City, State | Zip |
| King's | 4074930454 | King's | 7189635311 |
| County | Phone | County | Phone |

Although the volume of information we receive from concerned members of the public prevents us from responding individually to every Report, be assured that we will carefully consider the information you have provided us to determine whether there is a matter for this Office to investigate. If we determine that your Report raises a matter within the jurisdiction of this Office to investigate and that further information from you is necessary for our investigation, you will be contacted. This Office does not resolve individual consumer complaints.

NATURE OF ALLEGED CRIMINAL VIOLATION(S):

| | | | |
|---|---|---|---|
| ☐ Healthcare/Medicare Fraud | ☐ Tax Fraud | ☐ Terrorism/National Security | ☐ Internet Fraud |
| ☐ Public Corruption/Fraud/Waste | ☐ Organized Crime | ☐ Corporate Fraud | ☐ Drugs |
| ☐ Computer Crimes/Hacking | ☐ Environmental Crime | ☐ Human Trafficking (for sex or forced labor) | |
| ☐ Child Pornography/Exploitation | ☐ Mortgage/Bank/Credit Card/ATM Fraud & Identity Theft | | |
| ☐ Securities Fraud | ☑ Other (please explain) Federal Witness Intimidation & Police Misconduct | | |

Does this Report Pertain to an Ongoing Case?   ☐ Yes   ☐ No   ☐ Not Sure

If Yes, Please Provide the Following Case Information: Cannot Comment on Federal Case

Case Title and Docket Number (if known): Cannot Comment on Federal Case

Please clearly describe the violation of federal criminal laws that you would like to bring to our attention. Include as much information as possible, including the dates, places and nature of incident, and contact information for any witnesses (do not send original documents): Since making my last Criminal Complaint of Federal Witness

Intimidation & Retaliation to your Office, the Harassment & Intimidation has only Intensified.

Local Agents are violating 18 U.S.C. Codes 1512 & 1513, are violating 42 U.S.C 1983, are

Intentionally Destroying Evidence & Covering-up Their Crimes & are Committing Obstruction.

# <u>EXHIBIT 8: Crime Report of Police Misconduct & Federal Witness Tampering Made to D.A.</u>

**Keith Fernandez**
One South First St., Apt 29E
Brooklyn, NY 11249

*Dated: 5/2/2020*

To The Brooklyn District Attorney:

I wanted to make your Office aware of some Extreme and Continuing Federal Witness Tampering & Intimidation that is occurring to me as **Direct Retaliation** for being a Federal Whistleblower & Reporting Police Misconduct and Intimidation by the NYPD. This is a follow-up letter to my letter sent to you on 4/24/20. **This Extreme Witness Intimidation has only Intensified and Worsened since reporting these violations to your Office on 4/24/20.**

Such Flagrant Witness Intimidation Behavior by the NYPD boiled over into a **Flagrant Felony Incidents** on 4/26/20, 4/30/20 and 5/1/20 resulting in Multiple Felony Crimes (not committed by the Plaintiff) violating the following:

1. N.Y. Penal Law § 155.30 – Felony Grand Larceny
2. N.Y. Penal Law § 140.20 – Felony Burglary
3. N.Y. Penal Law § 215.40(2) – Felony Tampering with Evidence
4. N.Y. Penal Law § 120.05 – Felony Assault in the Second Degree
5. 42 U.S.C. §1983 – Unlawful Detention and Confinement
6. 18 U.S. Code §§ 1501 – 1521 – Obstruction of Justice
7. 18 U.S. Code § 1512 – Felony Witness Tampering
8. 18 U.S. Code § 1513 – Retaliation against a Federal Witness

Immediately after reporting the Extreme Witness Tampering Behavior to your Office on 4/24/20, I was further Retaliated Against.

On 4/26/20, I left my apartment around noon and returned to find that my apartment had been Broken Into and my Expensive ~$1,500 Solid Gold Harvard Class Ring had been stolen from my apartment. This resulted in Police Report being filed (See *Incident Information Slip*) and a Complaint being filed with my Land-Lord (See *Email Complaint*). The NYPD Officers Galindo & Martino (aka *"Galindo Martino"*) intentionally did not take my Complaint seriously and tried to cover up the Larceny & Burglary. They intimidated me and wrote "Galindo

# EXHIBIT 8: Crime Report of Police Misconduct & Federal Witness Tampering Made to D.A.

Sanchez" or "Got Sanchezed" on the Report, a Disgusting Sexual & Racist Taunt. (See *Information Slip*). When I asked if they had been Tampered with or if they knew about my Complaint of Harassment to the NYPD OIG, they Perjured and said "No." They seemed nervous as they knew this was a Complete Lie.

On 4/30/20, I left my apartment around 8pm and returned around 9pm to find that once again, the Door to my Apartment had been Illegally Accessed and the Security Bolt had been tampered with propping my door open (See *Pictures*), obviously reflecting another Burglary (See *Email Complaint*).

After discovering yet another Burglary, I went to my Landlord to complain and only made the following statement: "This is a Felony Human Rights Crime." I did not Scream. I did not Shout. I did not Violently Lunge at anyone. I made No Violent Threat. I had No Weapon. I did not do Anything Illegal whatsoever. The only thing I said was: "This is a Felony Human Rights Crime." **I want to Subpoena the Video Surveillance from my Landlord to Prove This and am considering taking a Voluntary Lie Detector Test as I am 100% Telling the Truth.**

After making this Complaint, I go back up to my apartment and moments later 6 NYPD Officers and 2 Paramedics show up, including Officers *Galindo Martino*. They immediately start intimidating me. I ask them "Why so many cops? Do you really need 8 police to talk to me? Are you guys trying to Harass & Intimidate me?" I told them I made No Violent Threats. I told them the only thing I said was "This is a Felony Human Rights Crime." I told them "Go Check the Surveillance Video." They intentionally did not listen. Their goal was to Incarcerate Me and the Truth didn't matter whatsoever.

Knowing they were going to Frame Me as Witness Intimidation, I immediately started taking video on my personal Cell Phone of the incident to prove I was not acting violently, screaming or do anything wrong. I was just reporting another Crime against me. Within minutes, the Paramedics approached me and put me in Cuffs. They said I needed to be involuntarily committed. **The Paramedics didn't even do a Physical Examination and barely asked Keith any Questions. The decision to Commit Keith had been Framed Up and Completely Decided Beforehand. The Truth Didn't Matter. This was their Retaliation.**

# EXHIBIT 8: Crime Report of Police Misconduct & Federal Witness Tampering Made to D.A.

Furthering their extreme behavior and the notion that the Arrest was "Framed" and "Covered-Up," I return to my apartment the next day and see that **the Police had Intentionally Deleted the Video of the Arrest from my Personal Cell Phone**, committing N.Y. Penal Law § 215.40(2) – Felony Tampering with Evidence. I want to subpoena the Body Cam Footage of the Arrest from the NYPD to prove that I was taking Video of the Arrest and that the Video was Intentionally Destroyed, proving the N.Y. Penal Law § 215.40(2) Felony and Intent to Cover-Up the "False Arrest," a Flagrant Violation of 42 U.S.C. §1983.

Upon being taken to and arriving to Woodhull Hospital, the Cops kept intimidating and making fun of me. This suggested to me that the Hospital had been tipped off and were going to attempt to frame me. When I get to the Hospital, it becomes obvious that it was a "Sham Commitment" and "Fake Arrest." All of the other patients were Schizophrenic, Homeless, Extreme Drug Addicts, Mumbling to themselves, Freaking Out, Violently Lunging. Plaintiff Fernandez was just sitting their quietly. It looked Strange to everyone.

When I arrive to the Hospital, they refuse to give me any Food. **That night, when I am lying in my cell at 1am, a Hospital Employee wakes me up, turns on my lights and states "You're Getting Murdered."**

When I wake up the next morning on 5/1/20, with no Food in my Stomach or Water to drink, the Hospital Staff immediately ask me to Give Blood. When they went to insert the Needle, they did it Negligently and stuck it in the wrong vein. This caused Fernandez immense pain and he immediately Suffered a Vasovagal Syncope and Passed Out falling on the Ground. **Such Negligence & Psychiatric Harassment put him at risk for Permanent Brain Damage due to the restriction of Oxygen to his Brain from the Syncope.**

Immediately after suffering the Syncope, Plaintiff Fernandez goes to sit in the Common Area of the Psych Ward. **Within minutes, a Violent Patient approaches Fernandez while he is sitting (without being provoked whatsoever) and makes Menacing Lunges and Threats to him.** The Violent Patient tells Fernandez "I hate you Pussy White Boy. Give me your Fucking Chain." Fernandez was wearing no Chain and had no idea who told him he had a Chain.

# EXHIBIT 8: Crime Report of Police Misconduct & Federal Witness Tampering Made to D.A.

The entire time the Violent Patient was making Threats to Fernandez, the **entire Hospital Staff were watching the entire incident and Did Nothing**. The Staff laughed at Fernandez and intentionally Made Fun of Him, suggesting they had been tampered with by the Police. Additionally, they intentionally brought the Violent Patient out of his Cell every time Fernandez entered the Common Area and **let the Patient chase Fernandez around the Hospital Wing**.

This Extreme Behavior by the Hospital Staff suggested that they were Intentionally Letting Fernandez get Assaulted, Encouraged it and that they had been Tampered with by the Police.

**The Threats and Menacing by the Violent Patient finally boiled over and the Patient backed Fernandez to a Wall and then Struck Him in the Left Torso and Arm. The entire time, the Hospital Staff were watching and let it happen.** Only after Fernandez screamed "This is A Felony Crime," did the Staff come in and intervene to subdue the Violent Patient. The Violent Patient committed Felony 2nd Degree Assault under NY Penal Code as the Assault occurred "while being held in correctional facility," and with Aggravated Terroristic Threats and Menacing.

The entire Assault was captured on Surveillance Video and is Easily Provable. Fernandez filled out a Police Report in the Hospital signifying he wants to Press Charges (See *Hospital Police Report*). **If Charges are Not Filed, this is Obvious Obstruction of Justice and Intent to Cover-Up an Easily Provable Crime as it was all Captured on Hospital Surveillance Camera and over 20 people witnessed the Assault, Menacing & Terroristic Threats.**

Plaintiff Fernandez was then seen by the Hospital Physicians on 5/1/20. It was pretty obvious that this was a "Sham Commitment" and "Retaliation" by the NYPD for the WhistleBlower Suit. **They let Fernandez out on 5/1/20 and did not Formally Diagnose Him with any Psychiatric Disorder. He was acting calm.**

Fernandez will 100% be filing a Federal Civil Rights Lawsuit in the U.S. District Court against the NYPD and Hospital for this Incident asserting the following torts: (i) False Arrest & Imprisonment under 42 U.S.C. §1983, (ii) Deliberate Indifference in violation of the 8th Amendment, (iii) Assault & Battery for the Negligent Needle Puncture and resulting Syncope and (iv) Intentional & Negligent Infliction of Emotional Distress given the Physical Injury that occurred.

# EXHIBIT 8: Crime Report of Police Misconduct & Federal Witness Tampering Made to D.A.

He asks your Office to investigate the below crimes that occurred in relation to this incident. He will be requesting the Surveillance and Body Cam Footage of the Arrest from the NYPD (which is required to keep all videos of arrests for 18 months) and from the Hospital to prove these crimes. **He is worried the Police and Hospital may be attempting to Illegally Destroy this Surveillance Evidence & Cover-Up the Crime.**

1. **Felony Tampering with Evidence** for Intentionally Deleting Fernandez's Video of the Incident from his Cell Phone after the Arrest occurred to cover-up the Corruption
2. **Federal Witness Tampering & Retaliation** given the sustained, extreme and repetitive nature of the behavior by the NYPD against Fernandez in Direct Retaliation for his Federal Lawsuit
3. **Obstruction of Justice** for attempting to cover up these crimes

**I implore you to take proper actions to ensure that the Witness Intimidation of Plaintiff Fernandez stops and that any Responsible Local Agents are properly prosecuted, reprimanded and disciplined for their immature behavior. I also ask that you take proper measures to ensure that Plaintiff Fernandez is appropriately protected as a Federal Whistleblower, so that he does not end up Killed or in the Hospital. This is a Very Serious Matter and I hope you give it your utmost attention and time. Thank you.**

Respectfully Submitted,

_____

Keith Fernandez
If needed, please only reach out by email: kfernan88@gmail.com

# EXHIBIT #9: Compensatory Damages Table

## Loss of The Ability to Work in the New York Finance Industry due to Extreme Reputational Damages

| Description | YR 0 | YR 1 | YR 2 | YR 3 | YR 4 | YR 5 | YR 6 | YR 7 | YR 8 | YR 9 | YR 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Anticipated Compensation of a Financial Consultant in New York City with a Wharton Harvard Pedigree | | $150,000 | $200,000 | $250,000 | $300,000 | $350,000 | $400,000 | $450,000 | $500,000 | $510,000 | $551,262 |
| Earnings Potential as an Independent Contractor and Consultant after Damages | | 80,000 | 90,000 | 100,000 | 110,000 | 120,000 | 130,000 | 140,000 | 150,000 | 160,000 | 170,000 |
| Annuals Earnings Loss for Plaintiff Fernandez Due to Damages | | $70,000 | $110,000 | $150,000 | $190,000 | $230,000 | $270,000 | $310,000 | $340,000 | $350,000 | $381,262 |
| Plaintiff Fernandez Discount Factor (@ 7.5% Cost of Capital) | | 0.930 | 0.865 | 0.805 | 0.749 | 0.697 | 0.648 | 0.603 | 0.561 | 0.522 | 0.485 |
| Present Value of Earnings Loss for Plaintiff Fernandez Due to Extreme Reputational Damages | | $65,116 | $95,187 | $120,744 | $142,272 | $160,208 | $174,550 | $186,854 | $190,639 | $182,554 | $184,986 |
| Net Present Value (NPV) of the Earnings Loss (assuming Plaintiff works until age 70) | $1,503,510 | | | | | | | | | | |
| PV Terminal Value of the Annuity of Earnings Loss due to Severe Reputational Damages (Yr 1-10) | $2,710,862 | | | | | | | | | | |
| **Net Present Value (NPV) of Total Earnings Loss to Plaintiff Fernandez** | **$4,214,372** | | | | | | | | | | |

## Expected Value (Probability-Weighted Approach) Estimating the Potential Earnings Loss to Plaintiff Fernandez due to the Intentional Leaking and Soliciting of his Other Whistle-Blower Suit

| Description | YR 0 | YR 1 | YR 2 | YR 3 | YR 4 | YR 5 | YR 6 | YR 7 | YR 8 | YR 9 | YR 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Estimate of Potential Monetary Reward to Plaintiff Fernandez (Low-End) | | | | $2,000,000 | | | | | | | |
| Estimated Probability of a Low-End Outcome Occurring: Base Case | | | | 10% | | | | | | | |
| Estimated Probability of a Low-End Outcome Occurring: PF For Extreme Reputational Damages | | | | 20% | | | | | | | |
| Expected Value of Earnings Loss for Plaintiff Fernandez - Low-End Case | | | | $200,000 | | | | | | | |
| Estimate of Potential Monetary Reward to Plaintiff Fernandez (High-End) | | | | $60,000,000 | | | | | | | |
| Estimated Probability of a High-End Outcome Occurring - Base Case | | | | 10% | | | | | | | |
| Estimated Probability of a High-End Outcome Occurring - PF for Extreme Reputational Damages | | | | 20% | | | | | | | |
| Expected Value of Earnings Loss for Plaintiff Fernandez - High-End Case | | | | | $6,000,000 | | | | | | |
| Midpoint of Expected Value of Earnings Loss for Plaintiff Fernandez | | | | | $3,100,000 | | | | | | |
| Plaintiff Fernandez Discount Factor (@ 7.5% Cost of Capital) | | | 0.950 | 0.865 | 0.805 | | | | | | |
| Present Value of Earnings Loss for Plaintiff Fernandez Due to Extreme Reputational Damages | | | | | $2,495,378 | | | | | | |
| **Net Present Value (NPV) of the Expected Value of the Earnings Loss to Plaintiff Fernandez** | **$2,495,378** | | | | | | | | | | |

## Total Damages to Plaintiffs

| | |
|---|---|
| NPV of Total Earnings Loss to Plaintiff Fernandez | $4,214,372 |
| NPV of Expected Value of Total Earnings Loss to Plaintiff Fernandez re: Whistle-Blower Suit | $2,495,378 |
| Emotional Distress, Medical Bills, Pain & Suffering caused by Physical Assault | $750,000 |
| **NPV of Total Compensatory Damages to Plaintiffs** | **$7,459,750** |

(1) Estimated Compensation of a Post-MBA PE Executive with Plaintiff Fernandez's Pedigree comes from the 2018 NA Private Equity Investment Professional Compensation Survey, as well as internal estimates.

(2) Plaintiff Fernandez personal cost of capital is calculated as his blended cost of debt on his Student Loans (7.5%)

(3) The Terminal Value of the Annuity Earnings Loss for Plaintiff Fernandez is calculated utilizing the Present Value of aGrowing Annuity Formula over a 30 year period, assuming a 7.5% growth rate per annum and 7.5% CoC.

(4) The Terminal Value of the Annuity Earnings Loss for Plaintiff NGS is calculated utilizing the Present Value of aGrowing Annuity Formula over a 30 year period, assuming a 5% growth rate per annum and 15% CoC.

NPV of Growing Annuity:

$$\frac{P}{r-g}\left[1-\left(\frac{1+g}{1+r}\right)^{n}\right]$$

Discount Factor:

$$D_n = \frac{1}{(1+r)^n}$$

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| Keith Fernandez | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| | ) |
| City of New York, New York City Police Department, | ) |
| Officer Angelo Martino, Officer Jonathan | ) |
| Galindo-Sanchez, Woodhull Medical & Mental Health | ) |
| Center | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Officer Jonathan Galindo-Sanchez
City of New York, New York City Police Department
211 Union Ave
Brooklyn, NY 11211

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Keith Fernandez
69 Montgomery St #331
Jersey City, NJ 07302

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:   _____05/05/2020_____                    _____
                                                          *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ | 0.00 | .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| Keith Fernandez | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | )     Civil Action No. |
| City of New York, New York City Police Department, Officer Angelo Martino, Officer Jonathan Galindo-Sanchez, Woodhull Medical & Mental Health Center | ) ) ) ) |
| _Defendant(s)_ | ) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  City of New York, New York City Police Department
211 Union Ave
Brooklyn, NY 11211

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Keith Fernandez
69 Montgomery St #331
Jersey City, NJ 07302

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date:    _____05/05/2020_____          _____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| Keith Fernandez | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) Civil Action No. |
| City of New York, New York City Police Department, Officer Angelo Martino, Officer Jonathan Galindo-Sanchez, Woodhull Medical & Mental Health Center | ) |
| _Defendant(s)_ | ) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  Officer Angelo Martino
City of New York, New York City Police Department
211 Union Ave
Brooklyn, NY 11211

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Keith Fernandez
69 Montgomery St #331
Jersey City, NJ 07302

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date:      05/05/2020

_____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.


Date: _____                          _____
                                                                        *Server's signature*

                                                              _____
                                                                        *Printed name and title*

                                                              _____
                                                                        *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| Keith Fernandez<br><br><br>_____<br>*Plaintiff(s)*<br>v.<br>City of New York, New York City Police Department,<br>Officer Angelo Martino, Officer Jonathan<br>Galindo-Sanchez, Woodhull Medical & Mental Health<br>Center<br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Woodhull Medical & Mental Health Center
760 Broadway
Brooklyn, NY 11206

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Keith Fernandez
69 Montgomery St #331
Jersey City, NJ 07302

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  _____05/05/2020_____        _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

### PROOF OF SERVICE
#### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: